UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:

Alan Eugene Porter and  Case Number 19-45533
Regina Denise Porter,  Chapter 13
    Debtors.  Honorable Mark A. Randon
_____/

## OPINION REGARDING VALUE OF REAL PROPERTY

**I.    INTRODUCTION**

Alan and Regina Porter ("Debtors") have two mortgages with Wilmington Trust Company ("Creditor") on their Macomb Township, Michigan home ("the Property"). Debtors' petition-date balance on the first mortgage was $302,337.38 and $64,323.82 on the second. Their Chapter 13 reorganization plan proposes to avoid the second mortgage and treat the debt as unsecured ("the lien strip"). Challenging Debtors' $299,000.00 valuation of the Property, Creditor opposes the lien strip. The valuation determination requires the Court to ascertain the requirements for a bedroom in Michigan.

The Court conducted an evidentiary hearing on September 8, 2020. Mr. Porter testified. The Court also heard testimony and received competing appraisals from the parties' experts. This opinion states the Court's findings of fact and conclusions of law. Primarily because the Court finds the Property is a four–not a three–bedroom home, the petition-date value exceeded the amount owed on the first mortgage. Therefore, Creditor's second mortgage was not wholly unsecured and cannot be stripped.

1

## II. STIPULATIONS AS TO THE ADMISSION OF EXHIBITS

The parties stipulated that both appraisers were qualified to testify as experts and to the admission of their respective appraisals. Fed. R. Evid. 702. They also agreed to the admission of Debtors' Warranty Deed and several entries from the Court's docket.

## III. EVIDENTIARY HEARING TESTIMONY

### A. Mr. Porter's Testimony

Debtors purchased their three-bedroom; 2,700 square feet; new-construction home for $325,000.00 in 2004.[1] There is a master bedroom on the first floor and two other upper-level bedrooms. It has two-and-a-half baths, a second floor den with a "triangular cut out" in the wall that overlooks the great room, a patio off the rear of the home, and an attached three-car garage. The basement is unfinished. The home is in fair condition but needs several repairs. The carpet in the main living areas is buckling and needs to be replaced. Both the interior and exterior of the home needs repainting. Fifteen of the home's twenty or so windows also need to be replaced: the wood framing is rotted, the window handles are broken, and the two-ply windows are not air tight.[2] Mr. Porter has obtained estimates for the repairs, but he cannot afford to address them at this time. He believes the Property is worth $280,000.00.

---

[1] The record is not clear concerning the purchase price for this home. Creditor's expert testified that the Property sold in 2004 for $335,000.00.

[2] Mr. Porter testified that builder grade materials were used in his home. Three-ply windows would be an upgrade from what he has now and sufficient to keep the wind out.

2

### B. Debtors' Appraiser

Debtors' expert, Robert McDonald II, is a certified real estate appraiser. He's been an appraiser since 2002. He described the Property as in "rough" condition with several items of deferred maintenance that need to be addressed. Although a new construction when purchased, the Property contains no builder upgrades and has not been updated. The basement is unfinished.

Mr. McDonald used the sales comparison approach to determine the Property's fair market value. Using four comparable sales, and making adjustments, Mr. McDonald's opinion as to the Property's value as of April 4, 2019, is $299,000.00. Mr. McDonald testified that in order for a room to be considered a bedroom, it must have four walls and "enjoy privacy." Given the triangular cut out in the wall of the second floor den, he determined Debtors' home was a three bedroom–because the den could not be considered a fourth–and adjusted for that in the comparable homes.

### C. Creditor's Appraiser

Creditor's expert, Sheri Mykolaitis, is also a certified real estate appraiser. She has her own appraisal company and has been in the appraisal business since 2001. Ms. Mykolaitis used the sales comparison approach to determine the Property's fair market value. Using six comparable sales, and making adjustments, Ms. Mykolaitis's opinion as to the Property's value as of April 11, 2019, is $328,000.00.[3] She determined that

---

[3]On page two of Ms. Mykolaitis's appraisal, she notes that the 2018 State Equalized Value ("SEV") for the Property was $155,700.00, which roughly equates to a

3

because the second floor den has a closet, separate entrance, and had a bed in it at the time of her appraisal, it should be considered a fourth bedroom. Ms. Mykolaitis acknowledged that the carpet was buckling, but said it could be re-stretched. She found the paint to be adequate and the windows in average condition, given the age of the home.

## III. JURISDICTION

The Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. §§157(b)(2)(K).

## IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Chapter 13 debtors are generally prohibited from modifying claims "secured only by a security interest in real property that is the debtor's primary residence." 11 U.S.C. §1322(b)(2). An exception to the anti-modification provision applies if there are two mortgages on the home, and the home is worth less than the amount owed on the first mortgage. In that case, the second mortgage can be "stripped" from the property and treated as an unsecured debt in the reorganization plan. *See Lane v. W. Interstate Bancorp* (*In re Lane*), 280 F.3d 663, 664 (6th Cir. 2002) ("[w]here a creditor holds a second mortgage on a homestead valued at less than the debtor's secured obligation to a first mortgagee, . . . the holder of the second mortgage has only an 'unsecured claim' for 506(a) purposes").

Debtors argue they can avoid Creditor's second mortgage on their primary

---

fair market value of $311,400.00 (SEV x 2).

residence under 11 U.S.C. § 506(a)(1)–if the second mortgage is wholly unsecured. 11 U.S.C. § 506(a)(1) states:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Put simply, Debtors must prove by a preponderance of the evidence that the Property was worth less than $302,337.38 on the petition date to strip the second mortgage. *McKinney v. JP Morgan Chase Bank (In re McKinney)*, 501 B.R. 338, 339-40 (Bankr. E.D. Mich. 2013); *Johnston v. Suntrust Bank (In re Johnston)*, No. 12-05066, 2013 WL 1844751, at **5-6 (Bankr. W.D. Va. April 12, 2013).

The Court observed the demeanor of the three witnesses as they testified. The Court finds, overall, Mr. Porter was a credible witness; however, his testimony regarding the repairs needed at his home seemed exaggerated. The Court was also unconvinced by Mr. Porter's testimony that his home was disqualified from consideration as a four bedroom because of the "cut out" in the den's wall. The Court finds the testimony of both experts to be credible but, finds the testimony of Ms. Mykolaitis regarding the bedroom count and her appraisal, in general, to be more persuasive. The Court focuses on whether Debtors' home is a three versus a four bedroom, because if the home has four

bedrooms, the Court finds it was worth more than $302,337.38 on the petition date.[4]

### A. The Court Finds Debtors' Home is a Four Bedroom

The term "bedroom" is not defined in the Michigan Building Code. However, the Michigan Building Code–through its adoption of the 2015 International Residential Code ("IRC")–makes clear that a bedroom needs to be a habitable space. The IRC defines a "habitable space" as "[a] space in a building for . . . sleeping[.] Bathrooms, toilet rooms, closets, halls, storage or utility spaces and similar areas are *not* considered habitable spaces." International Residential Code, § R202 (2015) (emphasis added). Additionally, a habitable room "shall have a floor area of not less than 70 square feet." *Id.* at § R304.1. The minimum ceiling height must be not less than seven feet. *Id.* at § R305.1. And, "every sleeping room shall have not less than one operable emergency escape and rescue opening." *Id.* at § R310.1. In other words, a door or window that leads directly to the outside from within.

From the photographs and room dimensions accompanying Creditor's appraisal, Debtors' second floor "den" appears to satisfy these requirements (i.e., it meets the ceiling height and room dimension requirements and has an egress window). Dkt. No. 78-1. It also has a closet within its walls.[5] As such, the Court finds that the room is a

---

[4]Mr. McDonald testified that generally, a four bedroom home is worth more than a three bedroom.

[5]The Court finds this persuasive but not determinative evidence that the room should be considered a bedroom.

6

habitable space in its "as is" condition and should be considered a fourth bedroom.[6]

### B. The Property's Petition-Date Value Exceeds the Amount Owed on the First Mortgage

The Court has reviewed both appraisals and uses portions of both in reaching its conclusion as to the Property's petition-date (April 11, 2019) value. The Court focuses on Debtors' comparable sale number two and Creditor's comparable sale number four, because both occurred relatively close to the Debtors' petition date and involve properties on the Debtors' street. Moreover, both properties are 16 years of age–roughly the same age as Debtors' home.

Debtors' comparable sale number two is located at 21797 Summerfield Drive, 0.16 miles from the Debtors' home. It has 2,948 square feet; four bedrooms; two-and-a-half baths; a den; an unfinished basement; and an attached three-car garage. The master bedroom is on the first floor. In February, 2019, the property sold for $334,900.00. It was on the market for only seven days. Mr. McDonald adjusted the sales price to account for the differences between the Debtors' home and the comparable property.[7] The adjusted sales price for the comparable home is $315,400.00.

---

[6]Mr. McDonald testified that the den *could* be made into a fourth bedroom by completing (repairing) the wall, but the Court finds such repairs are unnecessary for the room to be considered a fourth bedroom.

[7]Adjustments were made for: condition, square footage, unfinished basement, functional utility, and patio. Mr. McDonald made an adjustment in the amount of negative $9,000.00 for functional utility to account for Debtors' home only having three bedrooms.

7

Creditor's comparable sale number four is located at 21346 Summerfield Drive, .28 miles from Debtors' home. It is has 2,602 square feet; four bedrooms; two-and-a-half baths; an unfinished basement; and an attached two-car garage. Like Debtors' home, its master bedroom is on the first floor. In April, 2019, the property sold for $300,000.00. It was on the market for 117 days. Ms. Mykolaitis adjusted the sales price to account for the differences between Debtors' home and the comparable property.[8] The adjusted sales price for the comparable home is $306,780.00.

The Court has closely scrutinized these sales and the adjustments made by the parties' experts. Consistent with the Court's finding that Debtors' home is a four bedroom, Mr. McDonald's adjustment of negative $9,000.00 for functional utility is unreasonable because the adjustment is premised, at least in part, on Debtors' home being a three bedroom. The Court declines to put an exact value on the Property but finds the fair market value to be between $306,780.00 and $311,400.00.[9] *See In re McKinney*, 501 B.R. 338, 340 (Bankr. E.D. Mich. July 26, 2013) ("determining the value of the Property is not something that can be done with any sort of scientific precision or certainty. It necessarily involves some uncertainty").

## V.  CONCLUSION

Based on the findings of fact, conclusions of law, and the reasons stated in this

---

[8] Adjustments were made for square footage and the two-car garage.

[9] These values represent Ms. Mykolaitis's adjusted comparable number two and twice the home's SEV.

opinion, the Court finds the Property is worth between $306,780.00 and $311,400.00. Creditor's second mortgage, therefore, is not wholly unsecured and may *not* be "stripped" from the Property.

**IT IS ORDERED.**

**Signed on September 23, 2020**



/s/ Mark A. Randon

**Mark A. Randon**
**United States Bankruptcy Judge**